NORFOLK SOUTHERN RAILWAY CO., APPELLANT v. BOGLE ET AL., APPELLEES.

[Cite as *Norfolk S. Ry. Co. v. Bogle,*
115 Ohio St.3d 455, 2007-Ohio-5248.]

(No. 2006–1025—Submitted May 1, 2007—Decided October 10, 2007.)

———————

O'DONNELL, J.

{¶ 1} The central issue presented for our consideration concerns whether the application of the prima facie filing requirements of 2003 Am.Sub.H.B. 292 ("H.B. 292"), as codified in R.C. 2307.92, to asbestos claims arising out of the Federal

Employers' Liability Act ("FELA") or the Locomotive Boiler Inspection Act ("LBIA") infringes upon the Supremacy Clause of the United States Constitution and therefore is preempted by federal law. For the reasons that follow, we have concluded that the appellate court erred in finding preemption, and therefore, we reverse the judgment of the court of appeals.

### H.B. 292

{¶ 2} Based on its belief that "[t]he current asbestos personal injury litigation system is unfair and inefficient, imposing a severe burden on litigants and taxpayers alike," the General Assembly enacted H.B. 292. H.B. 292, Section 3(A)(2), 150 Ohio Laws, Part III, 3970, 3988. By the end of 2000, "over six hundred thousand people [had] filed asbestos claims" nationwide, and Ohio had "become a haven for asbestos claims and, as a result, is one of the top five state court venues for asbestos filings." Id. at Section 3(A)(3)(a) and (b), 150 Ohio Laws, Part III, 3989. The General Assembly further noted that in Cuyahoga County alone, the asbestos docket increased from approximately 12,800 cases in 1999 to over 39,000 cases by October 2003. Id. at Section 3(A)(3)(e), 150 Ohio Laws, Part III, 3989. Eighty-nine percent of claimants do not allege that they suffer from cancer, and "[s]ixty-six to ninety per cent of these non-cancer claimants are not sick." Id. at Section 3(A)(5), 150 Ohio Laws, Part III, 3990.

{¶ 3} Upon these considerations, the General Assembly enacted R.C. 2307.91 through 2307.98 to serve four primary purposes: (1) to give priority to those claimants who can demonstrate actual physical harm caused by asbestos, (2) to preserve the rights of those who were exposed for future action, (3) to enhance the state's system of supervision and control over asbestos-related litigation, and (4) to conserve the scarce resources of the defendants so as to allow compensation for cancer victims while also securing a right to similar compensation for those who suffer harm in the future. Id. at Section 3(B), 150 Ohio Laws, Part III, 3991.

{¶ 4} At issue here are R.C. 2307.92 and 2307.93. R.C. 2307.92(B) provides, "No person shall bring or maintain a tort action alleging an asbestos claim based on a nonmalignant condition in the absence of a prima-facie showing" of physical injury caused by asbestos exposure. The prima facie showing requires the claimant to submit a report containing medical findings and to include a demonstration "that the exposed person has a physical impairment, that the physical impairment is a result of a medical condition, and that the person's exposure to asbestos is a substantial contributing factor to the medical condition." Id. The statute also contains prima facie filing requirements for asbestos claimants who bring a wrongful-death action, and for claimants who are smokers suffering from lung cancer. R.C. 2307.92(C) and (D).

{¶ 5} In cases filed after the effective date of the legislation, a claimant has 30 days after initiating the action to comply with these prima facie requirements. R.C. 2307.93(A)(1). In cases pending at the time of the bill's passing—such as those in the instant matter—claimants had 120 days from the effective date to comply. R.C. 2307.93(A)(2). Failure to file the report results in administrative dismissal, a procedure by which the case is essentially rendered inactive, but the court retains jurisdiction over the matter. R.C. 2307.93(C). A claimant may move to reinstate the case to the active docket if the claimant "makes a prima-facie showing that meets the minimum requirements specified in division (B), (C), or (D) section 2307.92 of the Revised Code." Id.

## The Supremacy Clause and Preemption

{¶ 6} The Supremacy Clause of the United States Constitution provides that "the Laws of the United States * * * shall be the supreme Law of the Land; * * * any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Clause 2, Article VI, United States Constitution. The clause grants Congress the power to preempt state laws. See *Jenkins v. James B. Day & Co.* (1994), 69 Ohio St.3d 541, 544, 634 N.E.2d 998, citing *In re Miamisburg Train Derailment Litigation* (1994), 68 Ohio St.3d 255, 259, 626 N.E.2d 85.

{¶ 7} The United States Supreme Court has identified three methods by which Congress may preempt state legislation. First, it may expressly state that an enactment preempts applicable state law. *Shaw v. Delta Air Lines, Inc.* (1983), 463 U.S. 85, 95–98, 103 S.Ct. 2890, 77 L.Ed.2d 490. Second, Congress may preempt an entire field of activity, without expressly stating its intention to do so, if an intent to preempt can be inferred "from a 'scheme of federal regulation * * * so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' or where an Act of Congress 'touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" (Ellipsis and brackets sic.) *English v. Gen. Elec. Co.* (1990), 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65, quoting *Rice v. Santa Fe Elevator Corp.* (1947), 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447. Finally, Congress preempts state law when a state law actually conflicts with a federal law, i.e., "where it is impossible for a private party to comply with both state and federal requirements." *English*, 496 U.S. at 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65.

{¶ 8} This case involves field preemption, as Congress "intended to occupy the field" when it passed the FELA, Section 51, Title 45, U.S.Code and LBIA, Section 20701, Title 49, U.S.Code. *Napier v. Atlantic Coast Line RR. Co.* (1926), 272 U.S. 605, 613, 47 S.Ct. 207, 71 L.Ed. 432. Despite the preemption of substantive state regulation, however, the court has instructed that "FELA cases adjudicated in state courts are subject to state procedural rules." *St. Louis*

*Southwestern Ry. Co. v. Dickerson* (1985), 470 U.S. 409, 411, 105 S.Ct. 1347, 84 L.Ed.2d 303. State procedural rules therefore govern FELA claims in state court.

{¶ 9} In this instance, the FELA creates a claim based upon, inter alia, a violation of the LBIA. The LBIA "does not purport to confer any right of action upon injured employees. It merely makes violation of its prohibitions 'unlawful.' Yet it has been held consistently that the Boiler Inspection Act supplements the Federal Employers' Liability Act by imposing on interstate railroads 'an absolute and continuing duty' to provide safe equipment." *Urie v. Thompson* (1949), 337 U.S. 163, 188, 69 S.Ct. 1018, 93 L.Ed. 1282, quoting *Lilly v. Grand Trunk W. RR. Co.* (1943), 317 U.S. 481, 485, 63 S.Ct. 347, 87 L.Ed. 411.

### Procedural History

{¶ 10} This case began when four claimants, Homer Bogle, Charles Weldon, William Monroe, the administrator of the estate of Worth Oliver Bryant, deceased, and Eric Wiles, individually and in his capacity as executor of the estate of Larry Wiles, filed separate suits against Norfolk Southern Railway Company alleging asbestos-related injuries under the LBIA and seeking relief pursuant to the FELA. After the claimants filed suit, the General Assembly enacted H.B. 292, which required claimants with cases pending at the time of enactment to comply with its provisions requiring a medical report as described in the statute. The claimants, however, failed to comply with these requirements within the prescribed 120–day time period.

{¶ 11} In response to their failure, Norfolk filed this action seeking a declaration that R.C. 2307.92 applies to these claimants and that its requirements do not violate the Supremacy Clause of the United States Constitution. The trial court concluded that the requirements violated the Supremacy Clause because substantive rights created by federal statute—in this case the FELA and LBIA—"cannot be lessened or destroyed by a rule of practice." *Norfolk S. RR. Co. v. Ferebee* (1915), 238 U.S. 269, 273, 35 S.Ct. 781, 59 L.Ed. 1303. In the trial court's view, "application of H.B. 292 to the instant cases is preempted by the FELA and LBIA. Furthermore, all pending and future FELA/LBIA cases filed by plaintiffs pursuant to R.C. § 2307.93, et seq., are preempted by that extensive body of federal jurisprudence."

{¶ 12} Norfolk appealed that determination to the Cuyahoga County Court of Appeals. The appellate court affirmed the trial court's judgment, reasoning that the requirements of R.C. 2307.92 "would 'gnaw' at the FELA/LBIA claimants' substantive rights to assert a cause of action under federal law in a state court" and that the claimants "would essentially be indefinitely precluded from asserting their federal rights." *Norfolk S. Ry. v. Bogle,* 166 Ohio App.3d 449, 2006-Ohio-1540, 850 N.E.2d 1281, ¶ 26. The appellate court held that the application of the

statute to asbestos claims arising under the FELA and/or the LBIA infringes on the Supremacy Clause of the United States Constitution and thus is preempted by federal law.  Id. at ¶ 30.

{¶ 13} The case is now before this court upon our acceptance of Norfolk's discretionary appeal.

{¶ 14} Norfolk has asserted one proposition of law: "The medical criteria and the administrative dismissal process set forth in R.C. 2307.92 and R.C. 2307.93 are procedural and not substantive and are thus applicable to asbestos-related FELA/LBIA claims filed in state court without offending the Supremacy Clause of the United States Constitution or the doctrine of federal preemption."

{¶ 15} Norfolk urges that these statutes establish procedural rules that do not affect substantive federal rights and that the prima facie filing requirements mirror those established in the federal courts themselves.  Thus, in Norfolk's view, these procedural statutory requirements do not infringe on the field of locomotive safety that Congress has preempted.  The claimants have not filed a merit brief in this case and, therefore, did not argue before this court.

### The Burden on FELA Claimants

{¶ 16} We initially consider whether the prima facie filing requirements are substantive or procedural in nature, as the FELA/LBIA preempts all substantive state law in the field.  In *Jones v. Erie RR. Co.* (1922), 106 Ohio St. 408, 412, 140 N.E. 366, we stated that substantive laws or rules are those that "relate[ ] to rights and duties which give rise to a cause of action."  By contrast, procedural rules concern "the machinery for carrying on the suit."  Id. A review of the statutes reveals that they do not grant a right or impose a duty that "give[s] rise to a cause of action."  Id. Instead, the impact of these statutes is to establish a procedural prioritization of the asbestos-related cases on the court's docket. Nothing more.  Simply put, these statutes create a procedure to prioritize the administration and resolution of a cause of action that already exists.  No new substantive burdens are placed on claimants, because Civ.R. 11 requires a party to certify, by signing a complaint, that there are "good ground[s] to support it."

{¶ 17} In this context, we observe generally that the FELA applies to all railroad common carriers and their employees.  To recover for an injury, an employee must prove that the injury occurred in the course of employment, that the railroad was engaged in interstate commerce at the time of the injury, and that the injury resulted in whole or in part from the railroad's negligence.  See *Norfolk & W. Ry. v. Ayers* (2003), 538 U.S. 135, 160, 123 S.Ct. 1210, 155 L.Ed.2d 261.  That burden remains unchanged following enactment of R.C. 2307.92 and 2307.93.  Thus, the provisions of the statutes do not relate to the rights and duties that give rise to this cause of action or otherwise make it more difficult for

a claimant to succeed on the merits of a claim. Rather, they pertain to the machinery for carrying on a suit. They are therefore procedural in nature, not substantive.

{¶ 18} This conclusion, however, does not end our analysis, because procedural rules apply to federal claims only so long as they do not operate to impair a claimant's ability to enforce a federal right or cause of action. *Davis v. Wechsler* (1923), 263 U.S. 22, 24, 44 S.Ct. 13, 68 L.Ed. 143. Accordingly, "[s]trict local rules of pleading cannot be used to impose unnecessary burdens upon rights of recovery authorized by federal laws." *Brown v. W. Ry. of Alabama* (1949), 338 U.S. 294, 298, 70 S.Ct. 105, 94 L.Ed. 100. The prime consideration, therefore, is whether the procedural provisions impose an unnecessary burden on FELA claimants.

{¶ 19} Several decisions of the United States Supreme Court support the position that the application of the prima facie filing requirements does not impose an unnecessary burden on a federal right and therefore does not violate the Supremacy Clause. In *Minneapolis & St. Louis RR. Co. v. Bombolis* (1916), 241 U.S. 211, 36 S.Ct. 595, 60 L.Ed. 961, the court upheld a Minnesota provision relaxing the requirement of a unanimous verdict in an FELA case. Bombolis had filed a wrongful-death suit in a Minnesota state court alleging a violation of the FELA. Id. at 215, 36 S.Ct. 595, 60 L.Ed. 961. A Minnesota law provided that when a civil case had been submitted to a jury for at least 12 hours with no unanimous verdict, "five sixths of the jury are authorized to reach a verdict, which is entitled to the legal effect of a unanimous verdict at common law." Id. at 216, 36 S.Ct. 595, 60 L.Ed. 961. The railroad objected to this procedure, urging that the federal nature of the FELA claim required application of the Seventh Amendment, which the court noted "exacts a trial by jury according to the course of the common law, that is, by a unanimous verdict." Id., citing *Am. Publishing Co. v. Fisher* (1897), 166 U.S. 464, 17 S.Ct. 618, 41 L.Ed. 1079.

{¶ 20} Despite the federal claim at issue, the court rejected the application of the Seventh Amendment to a state court proceeding, reasoning that Congress "clearly contemplate[d] the existence of a concurrent power and duty of both Federal and state courts to administer the rights conferred by the statute in accordance with the modes of procedure prevailing in such courts." *Bombolis,* 241 U.S. at 218, 36 S.Ct. 595, 60 L.Ed. 961. Although the decision focused on the Seventh Amendment, the court also considered the broader effects of the "dual constitutional system of government," of which the Supremacy Clause is a crucial component. Id. at 221, 36 S.Ct. 595, 60 L.Ed. 961. Requiring a state court to use a federal procedural standard would, in the court's view, undermine the independent nature of the sovereign: "[W]hether [courts] should be considered as state or as Federal courts would from day to day depend not upon the character

and source of the authority with which they were endowed by the government creating them, but upon the mere subject-matter of the controversy which they were considering." Id.

{¶ 21} The United States Supreme Court has also held that whether the doctrine of forum non conveniens applies to FELA cases in state court is a matter for the forum state. *Missouri ex rel. S. Ry. Co. v. Mayfield* (1950), 340 U.S. 1, 4, 71 S.Ct. 1, 95 L.Ed. 3. In *Mayfield*, the court determined that states could employ the doctrine of forum non conveniens so long as the application did not work to discriminate against federal claims, reasoning that nothing in the FELA "purported 'to force a duty' upon the State courts to entertain or retain Federal Employers' Liability litigation 'against an otherwise valid excuse.'" Id. at 5, 71 S.Ct. 1, 95 L.Ed. 3, quoting *Douglas v. New York, New Haven & Hartford RR. Co.* (1929), 279 U.S. 377, 388, 49 S.Ct. 355, 73 L.Ed. 747.

{¶ 22} In more recent decisions, the United States Supreme Court has upheld other state court procedural rules that differ from those in place in the federal courts. In *Johnson v. Fankell* (1997), 520 U.S. 911, 915, 117 S.Ct. 1800, 138 L.Ed.2d 108, the court held that a defendant in an action brought in state court pursuant to Section 1983, Title 42, U.S.Code had no federal right to an interlocutory appeal from the denial of qualified immunity, even though denial constituted a final order for actions in federal court under Section 1291, Title 28, U.S.Code and *Mitchell v. Forsyth* (1985), 472 U.S. 511, 524–530, 105 S.Ct. 2806, 86 L.Ed.2d 411. The court has reasoned, " 'The general rule, bottomed deeply in belief in the importance of state control of state judicial procedure, is that federal law takes the state courts as it finds them * * *. Some differences in remedy *and procedure* are inescapable if the different governments are to retain a measure of independence in deciding how justice should be administered.'" (Emphasis added and ellipsis sic.) *Southland Corp. v. Keating* (1984), 465 U.S. 1, 33, 104 S.Ct. 852, 79 L.Ed.2d 1, quoting Hart, The Relations Between State & Federal Law (1954), 54 Col.L.Rev. 489, 508. Furthermore, the court has declared that "[w]hen a state court refuses jurisdiction because of a neutral state rule regarding the administration of the courts," it will act " 'with utmost caution before deciding that [the state court] is obligated to entertain the claim'" *Johnson*, 520 U.S. at 918, 117 S.Ct. 1800, 138 L.Ed.2d 108, quoting *Howlett v. Rose* (1990), 496 U.S. 356, 372, 110 S.Ct. 2430, 110 L.Ed.2d 332. "States may apply their own neutral procedural rules to federal claims, unless those rules are pre-empted by federal law." *Howlett*, 496 U.S. at 372, 110 S.Ct. 2430, 110 L.Ed.2d 332.

{¶ 23} And in *Am. Dredging Co. v. Miller* (1994), 510 U.S. 443, 114 S.Ct. 981, 127 L.Ed.2d 285, the court extended the reasoning of *Mayfield* to maritime actions brought pursuant to the federal Jones Act. In reaching its holding, the court emphasized that the doctrine of forum non conveniens "does not bear upon

the substantive right to recover, and is not a rule upon which * * * actors rely in making decisions about primary conduct—how to manage their business and what precautions to take." Id. at 454, 114 S.Ct. 981, 127 L.Ed.2d 285.

{¶ 24} In the instant case, R.C. 2307.92 and 2307.93 are "neutral state Rule[s] regarding the administration of the state courts," *Johnson,* 520 U.S. at 918, 117 S.Ct. 1800, 138 L.Ed.2d 108, that do "not bear upon the substantive right to recover," *Miller,* 510 U.S. at 454, 114 S.Ct. 981, 127 L.Ed.2d 285. The burden imposed is no greater than the Civ.R. 11 pleading standard established and followed throughout this state. The statute simply permits the court to prioritize claims for trial purposes.

{¶ 25} In holding that the LBIA preempted the application of these statutes, the court of appeals relied on *Brown v. W. Ry. of Alabama* (1949), 338 U.S. 294, 295, 70 S.Ct. 105, 94 L.Ed. 100. In *Brown,* the court invalidated a Georgia rule of practice that required a trial court to construe the allegations in a complaint " 'most strongly against the pleader' " when considering a motion to dismiss. Id. at 295, 70 S.Ct. 105, 94 L.Ed. 100, quoting *Brown v. W. Ry. of Alabama* (1948), 77 Ga.App. 780, 49 S.E.2d 833, syllabus. The application of this rule of practice to Brown's FELA claim resulted in a dismissal of the matter with prejudice, precluding future recovery. Id. Citing its desire for uniformity in adjudication of federal claims, the court emphasized its duty "to protect federally created rights from dismissal because of overexacting local requirements for meticulous pleadings." Id. at 299, 70 S.Ct. 105, 94 L.Ed. 100.

{¶ 26} *Brown* is distinguishable in two respects.

{¶ 27} First, the Georgia rule of practice had no similar federal counterpart. The federal rule, later embodied in *Conley v. Gibson* (1957), 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80, had long required a trial court to deny motions to dismiss unless it " 'appear[ed] from the allegations that a cause of action does not exist, rather than that a cause of action has been defectively stated.' " *Leimer v. State Mut. Life Assur. Co.* (C.A.8, 1940), 108 F.2d 302, 305, quoting *Winget v. Rockwood* (C.A.8, 1934), 69 F.2d 326, 329. The Georgia standard, therefore, was antithetical to that used in the federal courts. More important, the Georgia standard precluded recovery in a state court despite the fact that Brown's complaint would have easily withstood scrutiny in a federal forum.

{¶ 28} Second, the Georgia rule of practice functioned as a dismissal with prejudice, while in the instant case, failure to comply with the prima facie filing requirements carries no such penalty. A claimant who fails to comply with these requirements faces administrative dismissal *without* prejudice, and the case effectively becomes "inactive" for purposes of discovery and trial. R.C. 2307.93(C). Moreover, the statutes toll the limitations period and permit a claimant to reinstate the matter upon a showing of the requisite injury. Id. For

these reasons, R.C. 2307.92 and 2307.93 do not impose the same degree of burden on a party asserting a federal claim in state court as the rule of practice at issue in *Brown* does, and the court of appeals erred in holding the statute unconstitutional on this basis.

{¶ 29} We therefore hold that the prima facie filing requirements of R.C. 2307.92 are procedural in nature, and their application to claims brought in state court pursuant to the FELA and the LBIA does not violate the Supremacy Clause, because the provisions do not impose an unnecessary burden on a federally created right.

{¶ 30} Our conclusion that the procedural statute at issue does not impose an unnecessary burden on a federal right is fortified by the fact that the federal courts themselves have responded to the growth of asbestos litigation by initiating a similar method to prioritize asbestos-related cases. Beginning in 1991, the Judicial Panel for Multidistrict Litigation transferred 26,639 asbestos-related cases from federal district courts into one forum. *In re Asbestos Prods. Liability Litigation* (1991), 771 F.Supp. 415. To accommodate the ever-growing docket, the District Court for the Eastern District of Pennsylvania established a screening process regarding nonmalignant asbestos-related injuries through the use of a pretrial order. *In re Asbestos Prods. Liability Litigation* (Sept. 16, 1996), E.D.Pa. No. MDL 875, 1996 WL 539589, *1. For example, Administrative Order No. 8 applies to all asbestos claimants that file a complaint "without a doctor-patient medical report setting forth an asbestos related disease." *In re Asbestos Prods. Liability Litigation* (Jan. 16, 2002), E.D.Pa. No. 875, 2002 WL 32151574, *1. Claims without this documentation "shall be subject to administrative dismissal without prejudice and with the tolling of all applicable statutes of limitations." Id. Furthermore, after administrative dismissal of a case, a claimant may move to reinstate the case by submitting "an affidavit setting forth the facts that qualify the case for active processing," with the claimant bearing the burden to show "some evidence of asbestos exposure and evidence of an asbestos-related disease." Id. at *2.

{¶ 31} While the provisions of the statutes at issue are more specific than those enunciated in Administrative Order No. 8, the effect and purpose are generally the same. The Supremacy Clause does not require states to employ procedures identical to those in the federal courts, as long the procedures in question involve neutral rules regarding the administration of the courts. The statutes are procedural in nature, apply to all asbestos claims filed in Ohio regardless of the theory or statutory basis giving rise to relief, and serve to make efficient use of judicial resources.

{¶ 32} We therefore reverse the decision of the court of appeals and remand this cause for further proceedings.

Judgment reversed.

LUNDBERG STRATTON, O'CONNOR, LANZINGER, and CUPP, JJ., concur.

MOYER, C.J., and PFEIFER, J., dissent.

---

**PFEIFER, J., dissenting.**

{¶ 33} I disagree with the majority opinion's conclusion that R.C. 2307.92 does "not impose an unnecessary burden on a federally created right." The majority opinion states that "the impact of [R.C 2307.92] is to establish a procedural prioritization of the asbestos-related cases on the court's docket. Nothing more." I believe, to the contrary, that "[t]he new Ohio requirement precludes the [Federal Employers' Liability Act/Locomotive Boiler Inspection Act ('FELA/LBIA')] claimants from proceeding on their claims until filing the report satisfying the requirements of R.C. 2307.92 et seq. * * * [T]his requirement would 'gnaw' at the FELA/LBIA claimants' substantive rights to assert a cause of action under federal law in a state court." *Norfolk S. Ry. Co. v. Bogle,* 166 Ohio App.3d 449, 2006-Ohio-1540, 850 N.E.2d 1281, ¶ 26. I believe that FELA and LBIA preempt R.C. 2307.92. I dissent.

MOYER, C.J., concurs in the foregoing opinion.

---

Gallagher Sharp, Kevin C. Alexandersen, Colleen A. Mountcastle, and Holly M. Olarczuk–Smith, for appellant.

Squire Sanders & Dempsey, L.L.P., and Charles F. Clarke, urging reversal for amicus curiae, Association of American Railroads.