**HAVEL, APPELLEE, *v*. VILLA ST. JOSEPH ET AL., APPELLANTS.**

[Cite as *Havel v. Villa St. Joseph,* **131 Ohio St.3d 235, 2012-Ohio-552.**]

*Trials—Bifurcation of claims—R.C. 2315.21—Civ.R. 42—R.C. 2315.21(B) creates, defines, and regulates a substantive, enforceable right to separate stages of trial relating to the presentation of evidence for compensatory and punitive damages in tort actions and therefore takes precedence over Civ.R. 42(B) and does not violate the Ohio Constitution, Article IV, Section 5(B).*

(No. 2010-2148—Submitted September 21, 2011—Decided February 15, 2012.)

CERTIFIED by the Court of Appeals for Cuyahoga County, No. 94677, 2010-Ohio-5251.

————————————

**SYLLABUS OF THE COURT**

R.C. 2315.21(B) creates, defines, and regulates a substantive, enforceable right to separate stages of trial relating to the presentation of evidence for compensatory and punitive damages in tort actions and therefore takes precedence over Civ.R. 42(B) and does not violate the Ohio Constitution, Article IV, Section 5(B).

————————————

**O'DONNELL, J.**

{¶ 1} The Eighth District Court of Appeals certified a conflict between its decision in this case and a decision of the Tenth District Court of Appeals in *Hanners v. Ho Wah Genting Wire & Cable SDNBHD*, 10th Dist. No. 09AP-361, 2009-Ohio-6481, on the following question: "Whether R.C. 2315.21(B), as amended by S.B. 80, effective April 7, 2005 is unconstitutional, in violation of

Section 5(B), Article IV of the Ohio Constitution, because it is a procedural law that conflicts with Civ.R. 42(B)."

{¶ 2} In 1968, voters adopted an amendment to the Ohio Constitution commonly referred to as the Modern Courts Amendment that effectuated judicial reform. Ohio Constitution, Article IV, Section 5(B); see generally Milligan & Pohlman, *The 1968 Modern Courts Amendment to the Ohio Constitution*, 29 Ohio St.L.J. 811 (1968). The Modern Courts Amendment conferred authority on the Supreme Court of Ohio to promulgate rules relating to matters of procedure in courts of Ohio, while the right to establish the substantive law in Ohio remained with the legislative branch of government. Procedural rules promulgated pursuant to the Modern Courts Amendment supersede conflicting statutes that affect procedural matters but cannot "abridge, enlarge, or modify any substantive right." *Id.*

{¶ 3} Both R.C. 2315.21(B) and Civ.R. 42(B) deal with the issue whether the trial of a tort action should be bifurcated for the purpose of addressing claims for compensatory and punitive damages. R.C. 2315.21(B) provides that upon the motion of any party in a tort action in which a claim for compensatory damages and a claim for punitive damages are made, the trial *shall* be bifurcated. Civ.R. 42(B), on the other hand, vests a trial court with *discretion* to order a separate trial of any claim, cross-claim, counterclaim, third-party claim, or issue, when doing so would promote convenience and avoid prejudice, or when it would be economically prudent or efficient to do so.

{¶ 4} In addition to the obvious question of judicial discretion regarding whether to bifurcate damages claims, the related question presented by this case is whether R.C. 2315.21(B) creates a substantive, enforceable right to bifurcation or whether it is a procedural matter that conflicts with Civ.R. 42(B).

{¶ 5} In the uncodified language of 2004 Am.Sub.S.B. No. 80 ("S.B. 80"), 150 Ohio Laws, Part V, 7915, the legislature expressed its intent to create a

2

right to bifurcate claims for compensatory damages from claims for punitive damages in tort actions. Thus, R.C. 2315.21(B) creates, defines, and regulates a substantive, enforceable right to separate stages of trial relating to the presentation of evidence for compensatory and punitive damages in tort actions. Accordingly, we answer the certified question in the negative because R.C. 2315.21(B) supersedes Civ.R. 42(B) and does not violate the separation of powers required by the Ohio Constitution, Article IV, Section 5(B), as it is a substantive law that prevails over a procedural rule.

**Background**

{¶ 6}  On October 3, 2008, Villa St. Joseph, a nursing-home facility in Garfield Heights, Ohio, associated with the Village at Marymount, admitted John E. Havel for rehabilitation following hip surgery. While receiving care, he developed severe decubitus ulcers that required surgery. Following that surgery, on January 21, 2009, Maple Wood Care Centre, a nursing home in Streetsboro, Ohio, admitted him for continued care and rehabilitative assistance. There he contracted bacterial sepsis, necessitating treatment that he received at both Marymount and Lakewood Hospitals. Havel died on August 29, 2009, from bacterial sepsis caused by skin ulcers.

{¶ 7}  Sandra Havel ("Havel"), as the personal representative of the estate of John Havel, filed a complaint seeking both compensatory and punitive damages from Villa St. Joseph, Village at Marymount, Maple Wood Care Centre and Northern Health Facilities, Inc., d.b.a. Maple Wood Care Centre, and Extendicare Health Services, Inc., alleging claims for medical malpractice, wrongful death, and violations of the Ohio Nursing Home Patients' Bill of Rights pursuant to R.C. 3721.13. Villa St. Joseph and Village at Marymount (collectively, "Villa St. Joseph") moved to bifurcate the trial into two stages pursuant to R.C. 2315.21(B): an initial stage relating only to the presentation of evidence and determination by the jury as to the recovery of compensatory

damages, and, if necessary, a second stage involving the presentation of evidence and determination by the jury with respect to the recovery of punitive damages. The trial court denied the motion to bifurcate without stating a reason.

{¶ 8} Villa St. Joseph appealed to the Eighth District Court of Appeals, which affirmed the judgment of the trial court. The appellate court held that R.C. 2315.21(B) is unconstitutional because it conflicts with Civ.R. 42(B), in violation of the separation of powers required by the Ohio Constitution, Article IV, Section 5(B), by purporting "to legislate a strictly procedural matter already addressed by the Civil Rules." 8th Dist. No. 94677, 2010-Ohio-5251, ¶ 27. The court further determined that R.C. 2315.21(B) did not grant a right, but rather "specifies 'the machinery for carrying on the suit' by telling courts 'the procedural prioritization' for determining compensatory and punitive damages at trial." *Id*., quoting *Norfolk S. Ry. Co. v. Bogle*, 115 Ohio St.3d 455, 2007-Ohio-5248, 875 N.E.2d 919, ¶ 16.

{¶ 9} The court certified its decision to be in conflict with the Tenth District Court of Appeals in *Hanners*, and we agreed to resolve the conflict between these appellate districts, 127 Ohio St.3d 1530, 2011-Ohio-376, 940 N.E.2d 985.

## Constitutionality of R.C. 2315.21(B)

{¶ 10} Villa St. Joseph asserts that R.C. 2315.21(B) is constitutional because no conflict exists between the statute and Civ.R. 42(B), and therefore, the statute does not violate the Modern Courts Amendment. It further contends that even if a conflict exists, R.C. 2315.21(B), as specified in the uncodified language accompanying the statute, creates a substantive right. Villa St. Joseph argues that although the plain language of the statute setting forth the procedure for bifurcation is not ambiguous, it is ambiguous whether R.C. 2315.21(B) created a substantive right to bifurcation of the trial for determining compensatory and punitive-damages claims. According to Villa St. Joseph, the uncodified language

of the statute eliminates that ambiguity and evinces the intent of the legislature to create a substantive right to bifurcation. For these reasons, Villa St. Joseph petitions this court to conclude that R.C. 2315.21(B) is constitutional.

{¶ 11} Havel urges that R.C. 2315.21(B) is unconstitutional because it violates the Modern Courts Amendment, contending that bifurcation is a matter of procedural law, not substantive law, and the mandatory bifurcation process set forth in R.C. 2315.21(B) conflicts with the discretionary bifurcation procedure conferred by Civ.R. 42(B). Therefore, she argues, the rule prevails over the statute. Further, Havel relies on *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 715 N.E.2d 1062 (1999), for the proposition that this court has already determined that the statute does not create a substantive right. She also maintains that no ambiguity exists in the codified language of the statute to justify consideration of its uncodified language, which, in its final analysis, she asserts, supports her position that R.C. 2315.21(B) is a procedural law.

### Issue of Conflict

{¶ 12} The Modern Courts Amendment of 1968 empowers this court to create rules of practice and procedure for the courts of this state. In *Proctor v. Kardassilaris*, 115 Ohio St.3d 71, 2007-Ohio-4838, 873 N.E.2d 872, we explained that Ohio Constitution, Article IV, Section 5(B) "expressly states that rules created in this manner 'shall not abridge, enlarge, or modify any substantive right.' " *Id*. at ¶ 17. "Thus, if a rule created pursuant to Section 5(B), Article IV conflicts with a statute, the rule will control for procedural matters, and the statute will control for matters of substantive law." *Id*.

{¶ 13} The plain language of R.C. 2315.21(B) creates no ambiguity regarding *its application*: a trial court, on the motion of any party, is required to bifurcate a tort action to allow presentation of the claims for compensatory and punitive damages in separate stages. The statute provides:

(1) In a tort action that is tried to a jury and in which a plaintiff makes a claim for compensatory damages and a claim for punitive or exemplary damages, upon the motion of any party, the trial of the tort action *shall* be bifurcated as follows:

(a) The initial stage of the trial shall relate only to the presentation of evidence, and a determination by the jury, with respect to whether the plaintiff is entitled to recover compensatory damages for the injury or loss to person or property from the defendant. During this stage, no party to the tort action shall present, and the court shall not permit a party to present, evidence that relates solely to the issue of whether the plaintiff is entitled to recover punitive or exemplary damages for the injury or loss to person or property from the defendant.

(b) If the jury determines in the initial stage of the trial that the plaintiff is entitled to recover compensatory damages for the injury or loss to person or property from the defendant, evidence may be presented in the second stage of the trial, and a determination by that jury shall be made, with respect to whether the plaintiff additionally is entitled to recover punitive or exemplary damages for the injury or loss to person or property from the defendant.

(Emphasis added.)

{¶ 14} The language of Civ.R. 42(B) is also unambiguous: it vests a trial court with discretion to order a separate trial of any claims or issues and applies to all civil actions. Specifically, it provides:

The court, after a hearing, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, *may* order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, or third-party claims, or issues, always preserving inviolate the right to trial by jury.

(Emphasis added.)

{¶ 15} Although, in some instances, the statute and the rule can be applied without conflict, such as when a tort action is not involved, there is an inconsistency between the statute and the rule when an action falls within the boundaries of R.C. 2315.21(B).

**Substantive versus Procedural Law**

{¶ 16} Given that an inconsistency exists, the statute's constitutionality depends upon whether the statute is a substantive or procedural law. In *Krause v. State*, 31 Ohio St.2d 132, 285 N.E.2d 736 (1972), overruled on other grounds by *Schenkolewski v. Cleveland Metroparks Sys.*, 67 Ohio St.2d 31, 426 N.E.2d 784 (1981), paragraph one of the syllabus, we defined "substantive" in the context of the constitutional amendment to mean "that body of law which creates, defines and regulates the rights of the parties. * * * The word substantive refers to common law, statutory and constitutionally recognized rights." *Krause* at 145. By contrast, procedural law "prescribes methods of enforcement of rights or obtaining redress." *Roe v. Planned Parenthood Southwest Ohio Region*, 122 Ohio St.3d 399, 2009-Ohio-2973, 912 N.E.2d 61, ¶ 34, citing *French v. Dwiggins*, 9 Ohio St.3d 32, 34, 458 N.E.2d 827 (1984).

{¶ 17} A right is defined as "[a] power, privilege, or immunity secured to a person by law," as well as "[a] legally enforceable claim that another will do or

will not do a given act." *Black's Law Dictionary* 1436 (9th Ed.2009). *Compare* R.C. 2505.02(A)(1) (defining a "substantial right" for the purpose of defining a final order as a "right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect"). Thus, classification of R.C. 2315.21(B) as a substantive or procedural law depends upon whether the statute creates a right.

{¶ 18} We are aided in our analysis of whether R.C. 2315.21(B) is substantive or procedural by examining previous decisions from our court involving similar issues.

{¶ 19} In *State v. Hughes*, 41 Ohio St.2d 208, 324 N.E.2d 731 (1975), we considered a conflict between R.C. 2945.68, which granted appellate courts the discretion to allow the state to file a bill of exceptions in a criminal matter, and App.R. 4(B), which permitted the state to appeal as of right in criminal cases. In determining that the rule must yield to the statute, we held that R.C. 2945.68 granted the state "a substantive right of appeal which did not exist at common law prior to the adoption of Section 6 of Article IV of the Ohio Constitution (now Section 3 of Article IV), and the implementing legislation contained in R.C. 2945.67 through 2945.70." *Id*. at 210. The purpose of R.C. 2945.67 through 2945.70 also served as a basis for that determination: those statutes granted "jurisdiction to appellate courts to hear appeals by the prosecution in criminal cases" as well as created "a *substantive* right in the prosecution to bring such appeals in the instances permitted by R.C. 2945.70 and the decisions interpreting that section." (Emphasis sic.) *Id*. at 210-211.

{¶ 20} We also recognized the statutory creation of a right in *State v. Rahman*, 23 Ohio St.3d 146, 148, 492 N.E.2d 401 (1986), which held that R.C. 2945.42 conferred a substantive right upon the accused in a criminal trial to exclude privileged spousal testimony concerning a confidential communication

and, as a substantive right, the spousal privilege could not be limited by a rule of evidence addressing the competency of a spouse to testify.

{¶ 21} The statutes at issue in *Hughes* and *Rahman* did not contain express language declaring the creation of a substantive right. Nonetheless, in determining that those statutes created substantive rights, our analyses considered the operative effect of each statute. Similarly, here, the express language of the statute does not declare the creation of a right, but its operative effect creates a right because a party in a tort action is entitled to bifurcation upon request; thus, we must determine if application of the procedural rule would invalidate that right.

{¶ 22} In *State v. Greer*, 39 Ohio St.3d 236, 530 N.E.2d 382 (1988), we considered the interplay between R.C. 2945.21(A)(2), which allowed a defendant to exercise 12 peremptory challenges during voir dire, and Crim.R. 24(C), which limited the number of peremptory challenges that could be exercised to six. We held that the rule regulated the application of the substantive right created by statute but did not restrict the right to the extent that it constituted a "*de facto* abrogation or modification of the right itself." *Id*. at 245-246.

{¶ 23} In the instant case, applying Civ.R. 42(B) to tort actions in which a party has requested bifurcation pursuant to R.C. 2315.21(B) would nullify the statute to the extent that a judge's refusal to bifurcate the trial would constitute a "de facto abrogation" of the mandatory bifurcation provided by the statute.

### Mandatory Bifurcation

{¶ 24} In *Norfolk S. Ry. Co.*, 115 Ohio St.3d 455, 2007-Ohio-5248, 875 N.E.2d 919, we addressed whether the prima facie filing requirements of R.C. 2307.92 and 2307.93 were substantive or procedural in the context of a federal preemption analysis. We concluded that the statutes were procedural in nature because they did not grant any rights or impose any duties that gave rise to a cause of action and stated, "[T]he impact of these statutes is to establish a

procedural prioritization of the asbestos-related cases on the court's docket. Nothing more. Simply put, these statutes create a procedure to prioritize the administration and resolution of a cause of action that already exists." *Id.* at ¶ 16.

{¶ 25} Unlike the statutes at issue in *Norfolk*, however, R.C. 2315.21(B) does more than set forth the procedure for the bifurcation of tort actions: it makes bifurcation mandatory. Indeed, mandatory bifurcation in tort actions did not exist prior to the amendment of R.C. 2315.21(B) by S.B. 80. *Compare Viers v. Dunlap*, 1 Ohio St.3d 173, 438 N.E.2d 881 (1982) (former R.C. 2315.19(A)(1), which codified the doctrine of comparative negligence, was "substantive in nature and effect," *id*. at 177, because "[w]here before a defendant was shielded from liability by a plaintiff's contributory negligence, this defendant no longer enjoys such protection. Where before a plaintiff who was contributorily negligent was denied recovery, he is now * * * entitled to damages. To characterize * * * such a fundamental change in the law as affecting only trial procedure and the mode by which a remedy is effected defies logic"). *Id.* at 175. Even the dissent recognizes that the statute takes away the discretion granted to a judge to allow bifurcation, by permitting parties to *demand* bifurcation.

{¶ 26} By eliminating judicial discretion, R.C. 2315.21(B) creates a concomitant right to bifurcation: because the court cannot deny a request for bifurcation under the specified circumstances, the statute turns a request into a demand for or an entitlement to bifurcation by controlling the outcome. We have previously recognized that a statute may create a right when it contains mandatory language and restricts judicial or agency discretion. *See, e.g*., *State v. Coffman*, 91 Ohio St.3d 125, 127, 742 N.E.2d 644 (2001) (former R.C. 2947.061(B) did not create a right to shock probation because "the statute committed decisions regarding shock probation to the plenary discretion of the trial court" and its terms "were permissive in nature"); *State ex rel. Duganitz v. Ohio Adult Parole Auth.*, 77 Ohio St.3d 190, 672 N.E.2d 654 (1996) (relator did not have a clear legal right

to be released from parole pursuant to former R.C. 2967.16 because the decision to grant a final release from parole rested with the Ohio Adult Parole Authority and therefore, the statute did not mandate release); *Cleveland Produce Co. v. Dennert*, 104 Ohio St. 149, 135 N.E. 531 (1922), syllabus (G.C. 11470, which required a trial court to issue findings of fact and conclusions of law when requested by a party following a bench trial, conferred "a substantial right" upon the requesting party; its provisions were "mandatory," and the failure of a court to issue such findings constituted reversible error). *Compare Cleveland Constr., Inc. v. Cincinnati*, 118 Ohio St.3d 283, 2008-Ohio-2337, 888 N.E.2d 1068, ¶ 17 (contractor had no property interest in a contract because the city had "extensive discretion" in considering bids). R.C. 2315.21(B), like the statute in *Krause*, "falls within that body of law traditionally denominated substantive. It both defines and regulates the rights of parties." 31 Ohio St.2d at 145, 285 N.E.2d 736.

### Uncodified Statutory Language

{¶ 27} The express language of the codified portion of S.B. 80 does not convey whether R.C. 2315.21(B) is a substantive or procedural law. We confronted a similar situation in *State ex rel. Loyd v. Lovelady*, 108 Ohio St.3d 86, 2006-Ohio-161, 840 N.E.2d 1062. The issue there concerned whether R.C. 3119.961 et seq. conflicted with Civ.R. 60(B), in violation of the Modern Courts Amendment. R.C. 3119.962 provided, "Upon the filing of a motion for relief under section 3119.961 of the Revised Code, a court *shall* grant relief from * * * a child support order under which a person or male minor is the obligor" pursuant to specified conditions. (Emphasis added.) R.C. 3119.961(A) allowed the motion to be filed notwithstanding provisions to the contrary in Civ.R. 60(B). Like the statute at issue here, R.C. 3119.961(A) contained no ambiguity as to its application; it divested trial courts of the discretion conferred by Civ.R. 60(B) in granting a motion for relief from judgment by mandating that, upon the filing of a

motion, courts "shall grant relief" from a child-support order provided that the obligor met the designated criteria.

{¶ 28} We began by acknowledging that all statutes enjoy a strong presumption of constitutionality and that legislative intent is the paramount concern of a court when interpreting a statute. *Loyd* at ¶ 13. Applying the well-settled rule of statutory construction requiring a court to " 'first look at the words of the statute itself' to determine legislative intent," we concluded that "it [was] not clear from the statute itself whether it was intended to be substantive or procedural." *Id.*, quoting *Carnes v. Kemp,* 104 Ohio St.3d 629, 2004-Ohio-7107, 821 N.E.2d 180, ¶ 16. We resolved that lack of clarity by considering the statements expressed by the General Assembly in the uncodified language in connection with R.C. 3119.961 et seq., noting that "although R.C. 3119.961 and 3119.962 are necessarily packaged in procedural wrapping, it is clear to us that the General Assembly intended to create a substantive right to address potential injustice." *Id.* at ¶ 14. Thus, because R.C. 3119.961(A) created a substantive right, as stated in the uncodified language of the statute, it did not "violate the separation of powers required by Section 5(B), Article IV of the Ohio Constitution." *Id.* at ¶ 15.

{¶ 29} Similarly, in this case, the statements made by the General Assembly in the uncodified language of S.B. 80 compel the conclusion that although R.C. 2315.21(B) may be "packaged in procedural wrapping," it is a substantive law because it creates a right to "address potential injustice." As in *Lovelady*, resort to uncodified law is proper here because uncertainty exists whether R.C. 2315.21(B) is substantive or procedural, and no rule of construction precludes our review of uncodified law in an effort to ascertain legislative intent.

{¶ 30} The uncodified language of S.B. 80 includes a "statement of findings and intent" made by the General Assembly. S.B. 80, Section 3, 150 Ohio Laws, Part V, at 8024. In its statement, the General Assembly asserted, "The

current civil litigation system represents a challenge to the economy of the state of Ohio," and recognized that "a fair system of civil justice strikes an essential balance between the rights of those who have been legitimately harmed and the rights of those who have been unfairly sued." Section 3(A)(1) and (2), *id*. The General Assembly further declared that "[r]eform to the punitive damages law in Ohio [was] urgently needed to restore balance, fairness, and predictability to the civil justice system." Section 3(A)(4)(a), *id*. at 8025.

{¶ 31} The uncodified language of the statute also distinguishes noneconomic damages, which "are intended to compensate a person for the person's loss," from punitive damages, which "are intended to punish a defendant for wrongful conduct." Section 3(A)(6)(a), *id.* at 8027. Among its findings, the General Assembly explained:

(d) While pain and suffering awards are inherently subjective, it is believed that this inflation of noneconomic damages is partially due to the improper consideration of evidence of wrongdoing in assessing pain and suffering damages.

(e) Inflated damage awards create an improper resolution of civil justice claims. The increased and improper cost of litigation and resulting rise in insurance premiums is passed on to the general public through higher prices for products and services.

(f) * * * In cases in which punitive damages are requested, *defendants should have the right to request bifurcation* of a trial to ensure that evidence of misconduct is not inappropriately considered by the jury in its determination of liability and compensatory damages. As additional protection, trial and appellate courts should rigorously review pain and suffering

awards to ensure that they properly serve compensatory purposes and are not excessive.

(Emphasis added.) Section 3(A)(6)(d) through (f), *id*. at 8028.

{¶ 32} These findings and statements by the General Assembly demonstrate its intent to create a substantive right to ensure that evidence of misconduct is not inappropriately considered by the jury in its assessment of liability and its award of compensatory damages. The dissent claims that R.C. 2315.21(B) is "no different" from other "legislative attempts to influence courtroom practice and procedure" that "we have overruled" in the past.

{¶ 33} The cases cited by the dissent, however, merely underscore that when a statute and rule conflict, the statute will prevail in matters of substantive law and the rule will prevail in matters of procedural law. In none of those cases did we undertake a substantive-versus-procedural analysis, nor did any involve a statute where the divestiture of discretion created a right, as here. In addition, those cases actually bolster our analysis and our result because they recognize that it is appropriate to consider the operative effect of the statute or rule in question when determining whether the statute is substantive or procedural. In *Alexander v. Buckeye Pipe Line Co.*, for example, we said that "the *effect* of Civ.R. 54(B) [was] purely procedural" and did not "affect" a "substantive right." (Emphasis added.) *Id*., 49 Ohio St.2d at 159, 359 N.E.2d 702.

{¶ 34} Contrary to the unsupported contention of the dissent, R.C. 2315.21(B) is not a procedural statute because it pertains to a procedural issue: as noted in *Lovelady*, which the dissent refers to but does not distinguish, a statute may create a substantive right despite being "packaged in procedural wrapping." *Id*., 108 Ohio St.3d 86, 2006-Ohio-161, 840 N.E.2d 1062, at ¶ 14.

{¶ 35} Accordingly, R.C. 2315.21(B) does not violate the Ohio Constitution, Article IV, Section 5(B) and is constitutional because it is a

14

substantive law that prevails over a procedural rule. Inherent in our conclusion is rejection of the argument that dicta contained in *Sheward*, which described the former version of R.C. 2315.21(B) as governing a procedural matter, should control our determination here. We have acknowledged that "R.C. 2315.21 is admittedly similar to the punitive-damages statute struck down in *Sheward*," *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 108, but despite the similarity, *Sheward* never considered the bifurcation question we confront in this case. Thus, we are not required to follow out-of-context dicta as precedent. *Arbino* at ¶ 93, 108.

### Conclusion

{¶ 36} R.C. 2315.21(B) creates a substantive right to bifurcation in tort actions when claims for compensatory and punitive damages have been asserted. Thus, R.C. 2315.21(B) creates, defines, and regulates a substantive, enforceable right to separate stages of trial relating to the presentation of evidence for compensatory and punitive damages in tort actions and therefore takes precedence over Civ.R. 42(B) and does not violate the Ohio Constitution, Article IV, Section 5(B).

{¶ 37} Accordingly, we answer the certified question in the negative and reverse the judgment of the court of appeals.

Judgment reversed.

LUNDBERG STRATTON, LANZINGER, and CUPP, JJ., concur.

O'CONNOR, C.J., concurs in judgment only.

PFEIFER and MCGEE BROWN, JJ., dissent.

_____

**MCGEE BROWN, J., dissenting.**

{¶ 38} The Modern Courts Amendment to the Ohio Constitution gives the Supreme Court of Ohio exclusive authority over standards for practice and procedure in Ohio courts. Ohio Constitution, Article IV, Section 5(B). The

constitutional provision also prohibits the General Assembly from enacting laws that conflict with our court rules.

{¶ 39} The statute before us, R.C. 2315.21(B), clearly conflicts with the rule we have established, Civ.R. 42(B), which governs motions for bifurcation. Contrary to the express command of Article IV, Section 5(B), however, the majority concludes that the General Assembly may override our rule in this context. This conclusion represents a sharp turn in our jurisprudence, and it dangerously unsettles the balance of power struck by the Modern Courts Amendment. Therefore, I must respectfully dissent.

{¶ 40} In the past, we have carefully guarded our rule-making authority against legislative attempts to influence courtroom practice and procedure. For example, we have overruled legislative attempts to undermine our rules with respect to the consolidation of claims, *Dir. of Highways v. Kleines*, 38 Ohio St.2d 317, 320, 313 N.E.2d 370 (1974) (holding that "the management of cases lies within the discretion of the court"); pleading requirements, *Rockey v. 84 Lumber Co.*, 66 Ohio St.3d 221, 225, 611 N.E.2d 789 (1993) (concluding that Civ.R. 8(A) prevails over R.C. 2309.01 with respect to pleading requirements because the court's rules "must control over subsequently enacted inconsistent statutes purporting to govern procedural matters"); the joinder and separation of claims, *Alexander v. Buckeye Pipe Line Co.*, 49 Ohio St.2d 158, 159-160, 359 N.E.2d 702 (1977) ("Questions involving the joinder and separation of claims and the timing of appeals are matters of practice and procedure within the rule-making authority of this court * * *"). R.C. 2315.21(B) is no different. While purporting to create "fairness" in the trial of tort cases, the General Assembly has usurped the court's authority by mandating how cases should be tried.

{¶ 41} Our precedent in this area is clear and well reasoned. We have followed the express language of the Modern Courts Amendment by invalidating statutes that override our rules governing procedural issues in Ohio courts. The

hallmark of such unconstitutional statutes is that they purport to influence the mechanics of the courtroom or " 'the machinery for carrying on [a] suit.' " *Norfolk S. Ry. Co. v. Bogle*, 115 Ohio St.3d 455, 2007-Ohio-5248, 875 N.E.2d 919, ¶ 16, quoting *Jones v. Erie RR. Co.*, 106 Ohio St. 408, 412, 140 N.E. 366 (1922). However, we have held that Article IV, Section 5(B) does not limit the General Assembly's authority to affect substantive rights, " 'which give rise to a cause of action.' " *Id.*, quoting *Jones* at 412. *See, e.g.*, *State ex rel. Loyd v. Lovelady*, 108 Ohio St.3d 86, 2006-Ohio-161, 840 N.E.2d 1062.

{¶ 42} The majority largely sidesteps our precedent regarding the substantive/procedural dichotomy. Instead, it defers to the General Assembly's purported intention that R.C. 2315.21(B) relates to a substantive right. Setting aside the problematic nature of the majority's conclusion—which it divines from a compilation of uncodified "findings and statements" rather than any express statutory language—the Ohio Constitution does not entitle the General Assembly to predetermine the constitutionality of its laws.

{¶ 43} We look to legislative intent to clarify ambiguous statutory language, but this statute is not ambiguous. We should not resort to legislative intent to determine that a statute is constitutional simply because the General Assembly intended it to be so. Only the courts may rule on a statute's constitutionality.

{¶ 44} To the extent that the majority undertakes an analysis of R.C. 2315.21(B), it apparently concludes that the statute creates a substantive right for defendants to limit the introduction of evidence of misconduct when juries consider compensatory damages. However, the conduct and control of trials are procedural, not substantive. Trial judges are in the best position to determine how a trial should proceed and to limit or prevent the introduction of prejudicial evidence. Civ.R. 42 provides this authority.

**{¶ 45}** Moreover, the uncodified commentary on which the majority relies hardly marks the *creation* of a right. Am.Sub.S.B. No. 80, Section 3(A)(6)(f) suggests, "[D]efendants should have the right to request bifurcation of a trial to ensure that evidence of misconduct is not inappropriately considered by the jury * * *." 150 Ohio Laws, Part V, 7915, 8028. But defendants, like plaintiffs, have long enjoyed that right under Civ.R. 42(B).

**{¶ 46}** Bifurcation is a classic courtroom procedural issue. A motion for bifurcation involves a question of how best to manage the competing interests of efficiency and prejudice in the courtroom, and we have determined that judges are best situated to answer that question. *See* Civ.R. 42(B). Indeed, in some cases, judges may find bifurcation wasteful or unfair, and our rule recognizes the discretion of judges to manage their cases with an eye toward those practical and important considerations.

**{¶ 47}** The conflict here is undeniable: whereas Civ.R. 42(B) gives discretion over bifurcation motions to judges, R.C. 2315.21(B) takes that discretion away and allows parties to *demand* bifurcation, even if the judge determines that bifurcation will not serve the efficiency or fairness of the proceedings.

**{¶ 48}** Like the statutes we previously invalidated in this context, R.C. 2315.21(B) purports to control not the underlying right or duty giving rise to the cause of action, but rather the court's procedure in handling the cause of action. R.C. 2315.21(B) is clearly distinguishable from the General Assembly's actions to define underlying rights, such as its recent amendments to criminal sentencing laws.[1] The statute is not about a substantive right; it is about court procedure.

**{¶ 49}** The Ohio Constitution vests this court with responsibility to superintend Ohio's courts. I would follow our jurisprudence and hold that trial

---

1. See 2011 Am.Sub.H.B. No. 86 (effective September 30, 2011) (broadly expanding judicial discretion over criminal sentencing).

courts, not the legislators, are best situated to determine when bifurcation is appropriate. In so holding, we would protect the independence of Ohio's judiciary and its rightful authority to determine how trials should proceed.

{¶ 50} R.C. 2315.21(B) is a procedural law mandating how judges should conduct their trials, and it clearly conflicts with Civ.R. 42(B). Therefore, pursuant to the Modern Courts Amendment of the Ohio Constitution, I would find the statute unconstitutional. I respectfully dissent.

PFEIFER, J., concurs in the foregoing dissenting opinion.

_____

The Dickson Firm, L.L.C., and Blake A. Dickson, for appellee.

Bonezzi, Switzer, Murphy, Polito & Hupp Co., L.P.A., Bret C. Perry, Stephen J. Hupp, and Donald J. Richardson, for appellants.

Michael DeWine, Attorney General, Alexandra T. Schimmer, Solicitor General, and Laura Eddleman Heim, Deputy Solicitor, urging reversal on behalf of amicus curiae state of Ohio.

Davis & Young and Richard M. Garner, urging reversal on behalf of amicus curiae Ohio Association of Civil Trial Attorneys.

Bricker & Eckler, L.L.P., Anne Marie Sferra, and Bridget Purdue Riddell, urging reversal on behalf of amici curiae Ohio Alliance for Civil Justice, Ohio Hospital Association, and Physician Insurers Association of America.

Law Offices of John C. Camillus, L.L.C., and John C. Camillus, urging affirmance on behalf of amicus curiae Ohio Association for Justice.

_____