CLEVELAND CONSTRUCTION, INC., APPELLEE, *v.*
CITY OF CINCINNATI, APPELLANT, ET AL.

[Cite as *Cleveland Constr., Inc. v. Cincinnati,*
118 Ohio St.3d 283, 2008-Ohio-2337.]

(No. 2007–0114—Submitted January 9, 2008—Decided May 21, 2008.)

**Lanzinger, J.**

{¶ 1} This discretionary appeal was accepted on the issues of whether an unsuccessful bidder may have a constitutionally protected property interest in a public contract and whether it may assert damages for lost profits in an action alleging violation of its procedural due process rights under Section 1983, Title 42, U.S.Code. We hold that because appellant, city of Cincinnati, did not abuse its discretion in failing to award the drywall contract to appellee, Cleveland Construction, Inc., no property interest in the contract ever existed; without a property interest, there is no due process violation.

## I. Background

{¶ 2} This case arises out of the expansion of the Cincinnati Convention Center in the early 1990s, a large-scale public project with an estimated budget of $145 million. As part of the planning for the expansion project, the city had planned to set aside 30 percent of the overall work for small business enterprises ("SBEs"). To achieve this goal, the city reserved a varying percentage of work for SBEs in each of the 35 contracts ultimately awarded for the project. All contract bidders for the project were apprised of this requirement in the documents accompanying the formal invitation to bid. The percentage for the contract to install drywall that was reserved for SBEs was 35 percent. The documents stated that failure to satisfy the 35 percent requirement could result in rejection of a bid.

{¶ 3} The drywall contract for the project was bid twice. None of the bids submitted in the initial round of bidding fulfilled the SBE requirement, and as a result, all bids were rejected by the city. A second round of bidding was held, and three bids were submitted. Two of those bids, submitted by Valley Interior Systems, Inc. ("Valley") and Kite, Inc., provided that at least 35 percent of the work would be performed by SBEs. Cleveland Construction failed to meet the

35 percent requirement, but did submit the lowest bid. The city ultimately awarded the contract to Valley, the lowest bidder who also satisfied the SBE requirement.

{¶ 4} Arguing that as the low bidder it had a protected property interest in the drywall contract, Cleveland Construction filed suit seeking damages for lost profits and injunctive relief to prevent Valley from proceeding on the drywall contract for the project. The trial court denied the injunctive relief, but later held that Cleveland Construction had a constitutionally protected interest in the drywall contract and that the city had deprived it of that interest without providing due process of law. The trial court awarded Cleveland Construction attorney fees and costs, but granted a directed verdict in favor of the city on Cleveland Construction's claim for lost profits.

{¶ 5} Cleveland Construction appealed, and the city filed a cross-appeal. The First District Court of Appeals affirmed the trial court's judgment finding a protected property interest and awarding attorney fees, but reversed the lower court's directed verdict and remanded the case for trial on damages. We accepted the city's discretionary appeal.

## II. Legal Analysis

{¶ 6} Because Cleveland Construction alleges a violation of procedural due process under Section 1983, Title 42, U.S.Code, we must consider federal rather than state law in this case. "The elements of, and the defenses to, a federal cause of action are defined by federal law." *Howlett v. Rose* (1990), 496 U.S. 356, 375, 110 S.Ct. 2430, 110 L.Ed.2d 332. Cleveland Construction must first establish that it had a constitutionally protected property interest before it may claim a violation of procedural due process rights. *Bd. of Regents of State Colleges v. Roth* (1972), 408 U.S. 564, 569–570, 92 S.Ct. 2701, 33 L.Ed.2d 548. Although the company alleges that it had such an interest in the drywall contract, it is well settled that a constitutionally protected property interest exists only when a claimant has "more than an abstract need or desire for it. [The claimant] must have more than a unilateral expectation of it. [The claimant] must, instead, have a legitimate claim of entitlement to it." Id. at 577, 92 S.Ct. 2701, 33 L.Ed.2d 548. Furthermore, not all benefits rise to the level of entitlements; a "benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock, Colorado v. Gonzales* (2005), 545 U.S. 748, 756, 125 S.Ct. 2796, 162 L.Ed.2d 658.

{¶ 7} The Sixth Circuit Court of Appeals has held that a property interest in a public contract is created in two situations: one, when a bidder is actually awarded a contract and then deprived of it; and two, when a governmental entity has limited discretion in awarding the contract yet abuses that discretion. *United of Omaha Life Ins. Co. v. Solomon* (C.A.6, 1992), 960 F.2d 31, 34.

Because Cleveland Construction was never actually awarded the contract and then deprived of it, the company has a property interest only if the city had no discretion to reject Cleveland Construction's bid or the city had such limited discretion that failing to award the contract to Cleveland Construction amounted to an abuse of discretion.

{¶ 8} To determine whether the city had the discretion to deny Cleveland Construction the drywall contract, we must look both to the city's municipal ordinances and the language of the relevant bid documents. In awarding contracts, the city retains broad discretion to accept and reject bids generally. Cincinnati Municipal Code 321–43 states that "[t]he City purchasing agent, City manager, or any other duly authorized contracting officer *may reject any bid for any reason or all bids for no reason* if acceptance of the lowest and best bid is not in the best interests of the City." (Emphasis added.)

{¶ 9} In this case, the city's bid package, which contained the invitation to bid and the bidding requirements, similarly reserved the right of the city to "reject any and all bids or parts of any bid * * * and not award a contract" and to "consider all elements entering into the question of determining the responsibility of the bidder." The documents also stated that "[a]ny bid which is incomplete * * * or which contains * * * irregularities of any kind, may be cause for rejection of [the] bid." The invitation to bid also informed potential bidders that they "will be subject to the provisions of the City of Cincinnati * * * Small Business Enterprise Program. Failure of a bidder to comply with these requirements may be cause for rejection of the bid."

{¶ 10} Clearly, the Cincinnati Municipal Code and the bidding documents are united in emphasizing the city's broad discretion to grant or deny contracts. In fact, the city is not required to award a contract at all if it is dissatisfied with any of the submitted bids.

{¶ 11} In bidding the drywall contract, the city exercised its considerable discretion to reject the entire first round of bids because none of the bids conformed to the SBE requirements. Cleveland Construction's bid was among those rejected, and the company did not challenge the city's decision.

{¶ 12} The First District Court of Appeals held, however, that the broad discretion granted to the city in awarding the drywall contract was not unlimited and that the city had abused its discretion in denying Cleveland Construction the contract. In so holding, the court relied upon Cincinnati Municipal Code 321–37(c)(4). That section states that "[i]n the event that the selection of the lowest and best bidder is based primarily upon [SBE requirements], the contract award may be made subject to the following limitation: the bid may not exceed an otherwise qualified bid by ten (10%) percent or Fifty Thousand Dollars ($50,-000.00), whichever is lower."

{¶ 13} Both the First District and Cleveland Construction interpret this section to mean that when the SBE requirements are the deciding factor in awarding a contract, a qualified bid may still be rejected if it exceeds the next lowest qualified bid by ten percent or $50,000, whichever is lower.

{¶ 14} The First District's interpretation is only one possible interpretation of this section, however. The other, advanced by the city, is that Cincinnati Municipal Code 321–37(c)(4) is merely a limitation that the city may impose upon a contract at its discretion ("the contract award may be made subject to" a cap). The cap is not required, according to the city, and it may impose the cap or not, relying only on its own judgment. To support its argument, the city cites Cincinnati Municipal Code 321–1–M, which provides that "may" is always used as a permissive term. Thus, when Section 321–37(c)(4) of the code states that an award *may* be limited by a cap, the city contends, the cap must be viewed as discretionary and not mandatory. Additionally, the city code provides that bids may be rejected for any reason or for no reason. Cincinnati Municipal Code 321–43. The city argues that the First District's conclusion ignores both of the above sections and thwarts what is clearly a theme in the code and in the bidding documents: that the city may take into account any number of factors in considering bids and is in no event required to award a contract to any particular bidder.

{¶ 15} Nevertheless, it is unnecessary for us to resolve the question of which interpretation is correct in order to determine whether Cleveland Construction had a property interest in the drywall contract. Even if we were to accept the First District's conclusion that Cincinnati Municipal Code 321–37(c)(4) limits the city's discretion to award a contract to a higher bidder when the award is made based upon SBE considerations, that conclusion does not mean that the city must award the contract to the lowest bidder, which in this case is Cleveland Construction. Simply because the city might be prohibited from accepting a specific bid does not mean that it loses its discretion to reject other bids for any reason. Even if the city had abused its discretion by awarding the drywall contract to Valley, it does not follow that it also abused its discretion by denying the contract to Cleveland Construction.

{¶ 16} The outcome of this case would be different if the contract and relevant municipal ordinances said that the contract would be awarded to the "lowest bidder." Instead, they said that the contract would be awarded to the "lowest *and best* bidder." (Emphasis added.) Cincinnati Municipal Code 321–37(a). And even the lowest and best bid may be rejected if the bid "is not in the best interests of the city." Cincinnati Municipal Code 321–43.

{¶ 17} Given the extensive discretion of the city in considering bids, Cleveland Construction had no property right in the drywall contract at issue in this case.

No property interest is created when a city properly exercises its discretion and does not award a contract to a party deemed not to have complied with the requirements of the invitation to bid. Because the city did not abuse its discretion, no property interest in the contract ever existed.

## III. Conclusion

{¶ 18} Because we hold that Cleveland Construction did not have a property interest in the drywall contract, it is unnecessary for us to address the remaining proposition of law regarding whether a disappointed bidder can recover lost profits in an action under Section 1983, Title 42, U.S.Code. A property interest is a necessary prerequisite to maintaining a Section 1983 action for deprivation of procedural due process. *Roth,* 408 U.S. at 569–570, 92 S.Ct. 2701, 33 L.Ed.2d 548.

{¶ 19} The judgment of the court of appeals is therefore reversed, and judgment is entered for the city.

Judgment reversed.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

PFEIFER, J., dissents and would affirm the judgment of the court of appeals.

---

LUNDBERG STRATTON, J., concurring.

{¶ 20} I agree that Cleveland Construction, Inc. did not have a property interest in the drywall contract awarded by the city of Cincinnati. I write to emphasize that I reach that conclusion on the narrow facts of this case. State law mandates only that public contracts of this magnitude be awarded to the "lowest and best bidder." R.C. 735.05. The Cincinnati Municipal Code also requires the city to select the "lowest and best bidder," but provides the city with broad discretion to "reject any bid for any reason." Cincinnati Municipal Code 321–37 and 321–43. In addition, the city's bid package gave the city broad discretion to reject a bid. Based upon these explicit factors in this case, I must concur with the majority. However, in cases involving other cities and under other circumstances, the outcome may be different.

{¶ 21} The Cincinnati City Council, in accordance with the city code, established the process for awarding city contracts, and the city of Cincinnati afforded broad discretion to determine the "lowest and best bidder" for the city. "Generally, courts in this state should be reluctant to substitute their judgment for that of city officials in determining which party is the 'lowest and best bidder.'" *Cedar Bay Constr., Inc. v. Fremont* (1990), 50 Ohio St.3d 19, 21, 552 N.E.2d 202. However, such broad discretion without real parameters also may give rise to

opportunities for abuse, unfairness, or partiality in the bidding process. Yet a bidder in such a case faces insurmountable obstacles in challenging the bid because the discretion is so broad. Nevertheless, efforts to improve the city's bidding procedures must be directed toward the city's governing body or to the General Assembly to establish stricter requirements in the bidding process under R.C. 735.05. Therefore, I reluctantly concur.

----

Statman, Harris & Eyrich, L.L.C., W. Kelly Lundrigan, and Elizabeth L. Hutton, for appellee.

Julia L. McNeil, Cincinnati City Solicitor, and Richard Ganulin and Mary Frances Clark, Assistant City Solicitors, for appellant.

Stephen L. Byron, Adam J. Rosplock, and John Gotherman, urging reversal for amicus curiae Ohio Municipal League.

Thomas R. Winters, First Assistant Attorney General, William P. Marshall, Solicitor General, and Susan M. Sullivan and Ara G. Mekhjian, Assistant Solicitors, urging reversal for amicus curiae state of Ohio.

Michael R. Gareau & Associates Co., L.P.A., and David M. Gareau, urging affirmance for amicus curiae Pacific Legal Foundation.

Ross, Brittain & Schonburg Co., L.P.A., and Alan G. Ross, urging affirmance for amicus curiae Northern Ohio Chapter of Associated Builders and Contractors.