

**Filed**
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

## PACIFIC DATA SYSTEMS, INC.,
Plaintiff-Appellee,

**v.**

## GUAM DEPARTMENT OF EDUCATION,
Defendant-Appellee,

## TELEGUAM HOLDINGS, LLC dba GTA,
Defendant-Intervenor-Appellant.

Supreme Court Case No. CVA22-017
Superior Court Case No. CV0760-21

## OPINION

## Cite as: 2024 Guam 4

Appeal from the Superior Court of Guam
Argued and submitted on December 12, 2023
Hagåtña, Guam

Appearing for Defendant-Intervenor-Appellant:
Anita P. Arriola, *Esq.*
William B. Brennan, *Esq.* (argued)
Arriola Law Firm
259 Martyr St., Ste. 201
Hagåtña, GU 96910

Appearing for Plaintiff-Appellee:
Joshua D. Walsh, *Esq.*
Razzano Walsh & Torres, P.C.
139 Murray Blvd., Ste. 100
Hagåtña, GU 96910

Appearing for Defendant-Appellee:
James L.G. Stake, *Esq.*
Guam Department of Education
501 Mariner Ave.
Tiyan, GU 96913

**E-Received**
9/23/2024 10:58:13 AM

BEFORE: F. PHILIP CARBULLIDO, Presiding Justice; KATHERINE A. MARAMAN, Associate Justice; and JOHN A. MANGLONA, Justice *Pro Tempore*.

**CARBULLIDO, P.J.:**

[1]     Teleguam Holdings, LLC dba GTA ("GTA") appeals the Superior Court's Decision and Order granting Pacific Data Systems, Inc.'s ("PDS") motion for a preliminary injunction enjoining the Guam Department of Education ("GDOE") from taking further action on procurement awards issued to GTA. After PDS lost a competitive bid to provide GDOE with phone and data services, it filed protests with GDOE, which the agency denied. PDS appealed to the Office of Public Accountability ("OPA"), which ultimately dismissed the case for lack of subject matter jurisdiction. Rather than seeking judicial review of this decision, PDS filed a complaint in the Superior Court against GDOE for injunctive and declaratory relief. GTA intervened in the case shortly thereafter.

[2]     Because PDS did not seek judicial review of the OPA's dismissal of its protest claims, the Superior Court lacked subject matter jurisdiction over any action seeking equitable relief under the Procurement Code. We reverse, vacate the preliminary injunction, and dismiss PDS's complaint.[1]

## I. JURISDICTION

[3]     This court has jurisdiction over appeals from the grant of an injunction under 7 GCA § 25102(f) (2005) and 7 GCA §§ 3107(a) and 3108(b) (2005). *See Sule v. Guam Bd. of Exam'rs for Dentistry*, 2011 Guam 5 ¶ 7.

## II. FACTUAL AND PROCEDURAL BACKGROUND

[4]     GDOE issued two Invitations for Bids ("IFBs") to procure telecommunications services. At the time of the procurement, PDS was the "incumbent service provider for the services being

---

[1] This opinion supersedes this court's December 15, 2023, expedited Order vacating the preliminary injunction. Order (Dec. 15, 2023).

procured in the IFBs," and GTA was a competing bidder.  Record on Appeal ("RA"), tab 1 at 5 (V. Compl., Oct. 28, 2021).

[5]      PDS protested each IFB shortly after GTA was announced as the winning bidder for both IFBs.  The protests for both IFBs allege: (1) that GTA could not perform on the service delivery date specified by GDOE, (2) that GTA's bids do not conform with the General Exchange Tariff ("the Tariff") in violation of the Guam Telecommunications Act, and (3) that GTA's pricing as presented in its bids may include illegal surcharges "above the price of goods and services represented to consumers."  RA, tab 22 (Opp'n Mot. TRO & Prelim. Inj., Dec. 15, 2021), Attach. 3 (Protest Letters, June 9-10, 2021).

[6]      GDOE denied both protests, and PDS timely appealed to the Office of Public Accountability (OPA).  RA, tab 22, Attach. 5 (Procurement Appeals, July 14, 2021).  At the OPA level, GDOE moved to dismiss the tariff-related claims due to a lack of subject matter jurisdiction. *See* RA, tab 22, Attach. 7 at 1 (OPA Order of Dismissal, Oct. 5, 2021).  Simultaneously, PDS moved to seek enforcement of the automatic stay.  RA, tab 22, Attach. 6 (Mot. Inj. Relief & Stay, Aug. 31, 2021).

[7]      After a formal hearing, the OPA granted GDOE's motion to dismiss for lack of subject matter jurisdiction "without prejudice" and instructed PDS to go before the Guam Public Utilities Commission (GPUC)—the agency responsible for enforcing the Tariff—then re-file its appeal with the OPA thereafter.  RA, tab 22, Attach. 7 at 2 (OPA Order of Dismissal).  Although the OPA did not reach the merits of PDS's motion to enforce the automatic stay, its decision granting GTA's motion to dismiss was memorialized in a written order:

> During the formal hearing, the Public Auditor granted [GDOE's] Motion to Dismiss for lack of Subject Matter Jurisdiction filed on August 31, 2021.  However, PDS *was instructed to file a petition or complaint* regarding the issue of [GTA's] bid prices violating the Telecommunication Act with [GPUC] *to decide on that*

*issue first*, as they are the proper forum, and then they may re-file an appeal with the [OPA] as these consolidated appeals will be Dismissed Without Prejudice.

*Id.* at 1-2 (emphases added).

[8] Twenty-three days after the OPA's dismissal for lack of subject matter jurisdiction,[2] PDS filed a complaint for injunctive relief and declaratory judgment in the Superior Court. The complaint cited efforts by GDOE to formalize contracts with GTA in apparent violation of the automatic stay.[3] However, the complaint did not seek review of the OPA's dismissal of the protest claims for lack of subject matter jurisdiction or the failure to address the motion seeking enforcement of the automatic stay.

[9] Finding that GDOE's actions posed irreparable harm to PDS, the Superior Court entered a Temporary Restraining Order against GDOE and ordered the agency to appear for a show cause hearing, which a representative from GTA also attended. GTA filed an application to intervene, which the Superior Court granted because it found GTA had a significantly protectable interest that GDOE did not sufficiently protect.

[10] GTA argued that PDS's failure to seek judicial review of the OPA's Order dismissing the appeal from GDOE within the 14 days required by statute foreclosed entitlement to the automatic stay.[4] RA, tab 34 at 4 (Opp'n Pl.'s Mot. Prelim. Inj., Apr. 27, 2022) ("PDS failed to timely appeal

---

[2] It is undisputed that PDS did not pursue the Telecommunications Act claims by filing "a petition or complaint" with the GPUC in accordance with OPA's instructions prior to filing for injunctive relief—or at any time thereafter. *See* RA, tab 22, Attach. 7 at 1-2 (OPA Order of Dismissal, Oct. 5, 2021); Appellee PDS's Br. at 11-12 (Nov. 3, 2023). During the hearing for the preliminary injunction, when asked about whether any action was taken with GPUC, GTA's counsel stated, "*[T]here is no formal filing that I'm aware of*, but there has been correspondence back and forth between my client and the GPUC, telling the GPUC about the tariff issues. What the GPUC is doing, I do not know. No one's brought anybody here." Transcript ("Tr.") at 39 (Mot. Hr'g, Aug. 2, 2022).

[3] While the protest was still before the OPA, on September 7, 2021, GDOE allegedly transmitted to GTA fully executed contracts for both IFBs with a congratulatory letter stating services shall commence no earlier than October 1, 2021. RA, tab 34 at 2 (Opp'n Pl.'s Mot. Prelim. Inj., Apr. 27, 2022). PDS refused to transition the services to GTA. *Id.*

[4] GTA also claims the automatic stay was not available because the protest was filed post-award. We need not address the question of whether the underlying protest claims were filed pre- or post-award, because the Superior

the OPA Order dismissing both appeals without prejudice."); RA, tab 6 (Mot. Prelim. Inj., Oct 29, 2021). In granting the preliminary injunction, the Superior Court found that the OPA's dismissal "without prejudice" left PDS with no alternatives but to seek injunctive relief "to preserve the status as it was when PDS made its appeal to the OPA, at which point the procurement . . . should have been stayed but was not." RA, tab 43 at 13 (Dec. & Order, Oct. 11, 2022). Despite considering the timeliness of the protest to GDOE and the appeal to the OPA, the Superior Court did not address whether PDS appealed from the OPA's decision within the jurisdictional timelines in the Procurement Code. GTA timely appealed.

### III. STANDARD OF REVIEW

[11] The Superior Court's decision to grant a preliminary injunction is reviewed for abuse of discretion. *Mack v. Davis*, 2013 Guam 13 ¶ 11. Issues involving statutory interpretation are reviewed *de novo*. *Mendiola v. Bell*, 2009 Guam 15 ¶ 11. "Whether a lower tribunal has jurisdiction is a question of law reviewed *de novo*." *Guam Fed'n of Tchrs. v. Gov't of Guam*, 2013 Guam 14 ¶ 24 (citing *Core Tech Int'l Corp. v. Hanil Eng'g & Constr. Co.*, 2010 Guam 13 ¶ 16). A question involving the waiver of sovereign immunity is reviewed *de novo*. *See, e.g.*, *Sumitomo Constr., Co. v. Gov't of Guam*, 2001 Guam 23 ¶ 7.

### IV. ANALYSIS

#### A. GTA Has Appellate Standing to Contest a Judgment Adversely Affecting a Procurement Award

[12] The Superior Court granted PDS's motion for a preliminary injunction, which asked the court "to enjoin GDOE from taking further action regarding performance under the Invitations for Bid" and "declare that the automatic stay under 5 GCA § 5425(g) was triggered upon the filing of

---

Court lacked subject matter jurisdiction to make such findings on the record before it. *See DFS Guam L.P. v. A.B. Won Pat Int'l Airport Auth.*, 2014 Guam 12 ¶ 34 (trial court's statements regarding timeliness of protests and applicability of automatic stay were clearly erroneous where it lacked subject matter jurisdiction over appeal).

the protest . . . and that GDOE's efforts to finalize the contract were in violation of law." RA, tab 43 at 2 (Dec. & Order). PDS claims GTA does not have an "injury in fact" because a winning bidder does not have a "protectable property interest" in a procurement award, where it is "followed by a timely procurement protest." Appellee PDS's Br. at 1-2 (Nov. 3, 2023).[5] Additionally, PDS claims that only GDOE has appellate standing to challenge a preliminary injunction "targeted solely" at GDOE. *See id.* at 1.

[13]     This case was brought as a "civil action" under the Superior Court's general jurisdiction pursuant to 7 GCA § 3105. RA, tab 1 (V. Compl.). The complaint invokes causes of action "specifically recognized and contemplated by Guam R. Civ. Proc. 65 and 57," seeking a preliminary injunction to enforce the automatic stay "mandated" by 5 GCA § 5425(g). *Id.* at 1. In the case of a civil action, 7 GCA § 25104 states that "[a]ny party aggrieved may appeal." 7 GCA § 25104 (2005). Likewise, section 25102(f) of the same chapter governing appeals in civil actions says that an appeal may be taken from an order granting an injunction. 7 GCA § 25102(f) (2005)). Therefore, a party "has standing to seek review of an order granting or dissolving the injunction by demonstrating that the party is legally aggrieved within the meaning of section 25104." *Tumon Partners v. Shin*, 2008 Guam 15 ¶ 33. An "aggrieved party" is "'[o]ne whose legal right is invaded by an act complained of, or whose pecuniary interest is directly and adversely affected by a decree or judgment." *Id.* ¶ 34 (alteration in original) (emphasis omitted) (quoting *Ala. Dep't of Env't Mgmt. v. Legal Env't Assistance Found., Inc.*, 973 So. 2d 369, 378, (Ala. Civ. App. 2007)); *see also DFS Guam L.P. v. A.B. Won Pat Int'l Airport Auth.*, 2020 Guam 20 ¶ 85 ("A party must be

---

[5] GTA and PDS are keenly aware of the property interests on both sides of a procurement dispute under Guam law—as they have appeared as adversary parties in procurement litigation before this court on multiple occasions. *See, e.g.*, *Teleguam Holdings LLC v. Guam*, 2018 Guam 5 ¶ 16 ("*Teleguam II*") (holding automatic stay does not foreclose appellate standing by depriving prevailing bidder of property interest in protest award); *Teleguam Holdings, LLC v. Guam*, 2015 Guam 13 ("*Teleguam I*") (prevailing party in procurement protest was wrongfully enjoined by TRO enforcing automatic stay).

'legally aggrieved' to have standing." (quoting *Teleguam Holdings LLC v. Guam*, 2018 Guam 5 ¶ 14 ("*Teleguam II*"))).

[14]    "While standing in general focuses on the harm caused by the underlying facts, for appellate standing, a party must show 'an adverse effect of the judgment.'" *Teleguam II*, 2018 Guam 5 ¶ 14 (citation omitted); *see also* 15A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3902 (3d ed. 2023) ("The most obvious difference between standing to appeal and standing to bring suit is that the focus shifts to injury caused by the judgment rather than injury caused by the underlying facts . . . ."). In *Teleguam II*, this court addressed the question of appellate standing in the context of a judicial determination affecting the outcome of a procurement protest:

> The law recognizes pecuniary interests in prospective contractual and business relations as sufficient to provide the minimal, yet necessary, showing required for appellate standing. Indeed, contrary to [protestor's] restrictive interpretation of pecuniary interest for standing purposes, Guam procurement law contemplates suits, *see* 5 GCA § 5480(a) (2005), and protests, *see* 5 GCA § 5425(a)-(b) (2005), by both "actual" and "prospective" bidders, offerors, and contractors, 5 GCA §§ 5425, 5480. By losing even a "prospective" contract, [a prevailing bidder] suffers an "adverse effect of the judgment" sufficient to confer appellate standing in a case where it was already a party.
>
> . . . . [A prevailing bidder] certainly has standing to appeal both pre-award and post-award challenges to procurements brought by other actual and prospective bidders, offerors, and contractors when [the prevailing bidder] would otherwise have been awarded the contract and is made a party to the suit. The Government of Guam has still not canceled or withdrawn the proposed award, which indicates its intent to contract with [the prevailing bidder].

2018 Guam 5 ¶¶ 17-18 (internal citations omitted). Here, GTA has shown an adverse effect of the preliminary injunction sufficient to confer appellate standing, based on its prospective contractual and business relations with GDOE.

[15]    We further find federal jurisprudence on appellate standing persuasive and consistent with our holding in *Teleguam II*. As we recently explained, "[t]hough this court is not an Article III

court constitutionally bound to require parties to establish standing, we nevertheless have adopted 'traditional standing requirements' based on Article III princip[les] and 'deriv[ed] guidance' from both state and federal courts." *In re Leon Guerrero*, 2023 Guam 11 ¶ 18 (third alteration in original) (quoting *Guam Mem'l Hosp. Auth. v. Superior Court*, 2012 Guam 17 ¶ 9), *petition for cert. filed* (U.S. Feb 1, 2024) (No. 23-828).  As the Ninth Circuit has recently stated, the "'standing to appeal' rule echoes—but 'is distinct from[—]the requirements of constitutional standing.'" *Habelt v. iRhythm Techs., Inc.*, 83 F.4th 1162, 1165–66 (9th Cir. 2023) (alteration in original) (quoting *United States ex rel. Alexander Volkhoff, LLC v. Janssen Pharmaceutica N.V.*, 945 F.3d 1237, 1241 (9th Cir. 2020)), *petition for cert. filed* (U.S. Apr. 18, 2024) (No. 23-1134).  "To show [appellate] standing under Article III, an appealing litigant must demonstrate that it has suffered an actual or imminent injury that is 'fairly traceable' to the judgment below and that could be 'redress[ed] by a favorable ruling.'" *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 432-33 (2019) (second alteration in original) (citation omitted).  "Although the determination of an injury may not always be simple, standing to appeal is recognized if the appellant can show an adverse effect of the judgment, and denied if no adverse effect can be shown." *Ass'n of Banks in Ins., Inc. v. Duryee*, 270 F.3d 397, 403 (6th Cir. 2001) (quoting 15A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3902 (2d ed. 1992)).

[16]    As a prevailing bidder, GTA has a valid property interest in the litigation stemming from the "proposed award" and the service contracts it signed with GDOE.  *See Tumon Partners*, 2008 Guam 15 ¶ 33.  The injunction is adverse to GTA because it prevents GDOE from performing any of its obligations to GTA under the executed contracts.  Based on these interests, the trial court granted GTA's motion to intervene as a matter of right before entry of the preliminary injunction.  *Cf. Habelt*, 83 F.4th at 1166 ("[U]nless the person intervenes in the suit or has a statutory right to

appeal, the person cannot appeal a suit to which it has not become a party." (quoting *United States v. Kovall*, 857 F.3d 1060, 1068 (9th Cir. 2017))). Nothing on the record suggests that GDOE has withdrawn the award or canceled the contract. In its brief, PDS acknowledges that a property interest is created where "a bidder is actually awarded a contract and then deprived of it." Appellee PDS's Br. at 2-3 (quoting *Cleveland Constr., Inc. v. Cincinnati*, 118 Ohio St. 3d 283, 2008-Ohio-2337, 888 N.E.2d 1068, at ¶ 7). Thus, GTA has appellate standing because it has sufficiently shown the adverse effect of the Superior Court's injunction.

## B. PDS Failed to Invoke the Superior Court's Subject Matter Jurisdiction Over Any Part of the Protest

[17] GTA argues that the Superior Court does not have an "extra-procurement scheme remedy" that "excuses an aggrieved bidder from complying with the Procurement Law's protest and appeal scheme [or] jurisdictional timelines."[6] Appellant's Br. at 8 (Sept. 20, 2023). It contends the Superior Court's exercise of jurisdiction over PDS's independent equitable action was "squarely at odds with this Court's procurement law jurisprudence." *Id.* at 8-9. According to GTA, since PDS did not timely appeal the OPA's dismissal of its claims "without prejudice," those claims are time-barred under 5 GCA § 5481(a). *Id.* at 12 ("Thus, the procurements could go forward as of the end of that fourteen (14) day period where no appeal was filed after the October 5, 2021 OPA dismissal without prejudice, or October 19, 2021."). We agree.

[18] We recently repeated that "[i]t is simply incorrect as a matter of law that [a plaintiff] has exhausted her administrative remedies when she fails to appeal an adverse [administrative] decision . . . ." *Story-Bernardo v. Gov't of Guam*, 2023 Guam 27 ¶ 20 (per curiam) (citing *Limtiaco v. Guam Fire Dep't*, 2007 Guam 10 ¶¶ 21, 53). Once the OPA issued the order dismissing the

---

[6] GTA claims the Superior Court "did not cite to any authority beyond" 7 GCA § 3105, a grant of general jurisdiction, and 5 GCA § 5480, the Government of Guam's waiver of sovereign immunity under the procurement code. Appellant's Br. at 8 (Sept. 20, 2023).

protests for lack of subject matter jurisdiction, PDS was statutorily required to seek judicial review of any adverse consequences resulting from the administrative decision, including the OPA's silence on PDS's request to enforce the automatic stay. Where the only recognized avenue for relief is administrative proceedings, including judicial review, a party may not avoid that process by filing an equitable action after the time for seeking judicial review has passed. *See Young v. Anne Arundel Cnty.*, 807 A.2d 651, 671 (Md. Ct. Spec. App. 2002) (quoting *Montgomery Cnty. v. Broad. Equities, Inc.*, 758 A.2d 995, 1005 (Md. 2000)); *Harrington v. Water Res. Dep't*, 171 P.3d 1001, 1005 (Or. Ct. App. 2007).[7]

### 1. Guam procurement law

[19] Title 5 GCA § 5480(a) provides a waiver of the Government of Guam's sovereign immunity in connection with contracts under the procurement law. That section provides:

> The Superior Court of Guam shall have jurisdiction over an action between Guam and a bidder, offeror, or contractor, either actual or prospective, to determine whether a solicitation or award of a contract is in accordance with the statutes, regulations, and the terms and conditions of the solicitation. The Superior Court shall have such jurisdiction in actions at law or in equity, and whether the actions are for monetary damages or for declaratory, or other equitable relief.

5 GCA § 5480(a). Relief from agency action in the Superior Court is generally unavailable under 5 GCA § 5480(a) where a party fails to seek review of an adverse agency decision. *See Teleguam*

---

[7] Persuasive authority from other jurisdictions should be used cautiously by courts and litigants in these cases. However, we find widespread support for this general principle. *See, e.g.*, *Lilian v. Commonwealth*, 354 A.2d 250, 252 (Pa. 1976) ("Where such an administrative remedy is statutorily prescribed the general rule is that a court—be it a court of equity or a court of law—is without jurisdiction to entertain the action."); *Ratley v. Sheriff's Civ. Serv. Bd. of Sedgwick Cnty.*, 646 P.2d 1133, 1136–37 (Kan. Ct. App. 1982) ("Where a district court has appellate jurisdiction to review the decisions of a quasi-judicial body, it has no jurisdiction in an independent equitable action to review alleged errors." (quoting *Thompson v. Amis*, 493 P.2d 1259 (Kan. 1972))); *Brooks v. Village of Canfield*, 296 N.E.2d 290, 297 (Ohio Ct. App. 1972) (holding that where right of appeal from agency order provided by law, cannot bring independent action in equity); *Pub. Serv. Comm'n v. Eighth Judicial District Court*, 818 P.2d 396, 399 (Nev. 1991) (explaining that declaratory relief should not be implemented to circumvent statutory judicial review procedures); *La Verne Co-op. Citrus Ass'n v. United States*, 143 F.2d 415, 419 (9th Cir. 1944) ("A study of relevant decisions leaves no doubt that an equity court has no jurisdiction to examine the validity of an administrative order where the administrative remedy has not been invoked or has not been completed and where the one harmed by the administrative order is the moving party in the equity action.").

*II*, 2018 Guam 5 ¶ 21. This is because the failure to exhaust administrative remedies in a procurement appeal creates a jurisdictional bar to bringing those claims in the Superior Court. *DFS*, 2020 Guam 20 ¶ 66 (citing *Town House Dep't Stores, Inc. v. Dep't of Educ.*, 2012 Guam 25 ¶ 32).

[20]     The Procurement Code contemplates two layers of administrative review before the protestor may seek judicial review of the administrative decisions in the Superior Court. First, an aggrieved "bidder, offeror, or contractor" may file a protest to the Chief Procurement Officer, or if the agency is exempt from other parts of the centralized procurement regime, as GDOE is, the head of the exempt agency. 5 GCA § 5425(a) (2005) ("The protest shall be submitted in writing within fourteen (14) days after such aggrieved person knows or should know of the facts giving rise thereto."). In the event of a timely protest, the automatic stay is triggered, and the procuring agency "shall not proceed further with the solicitation or with the award of the contract *prior to final resolution of such protest*, and any such further action is void . . . ."[8] *Id.* § 5425(g) (emphasis added). Second, the procuring agency's decision "may be appealed . . . to the Public Auditor within fifteen (15) days after receipt by the protestant of the notice of decision." *Id.* § 5425(e).

[21]     Only after exhausting this two-tiered administrative review system can a protestor obtain "judicial review" of the administrative decisions in the Superior Court. The Code states that "[a] decision of the Public Auditor *is final unless* a person adversely affected by the decision commences an action in the Superior Court in accordance with [5 GCA § 5480(a)]" by filing an "action[] at law or in equity" seeking judicial review in Superior Court. 5 GCA §§ 5425(f), 5480(a) (emphasis added); *Teleguam II*, 2018 Guam 5 ¶ 23 (holding appeals from OPA decisions are "civil

---

[8] The automatic stay may be lifted before the final resolution of the protest, only through the procedure set forth in subsections (g)(1)-(3), including a written determination from the Chief Procurement Officer or the Director of Public Works that the "award of the contract without delay is necessary to protect substantial interests of Guam." 5 GCA § 5425(g)(1)-(3).

actions"). Any action appealing from the OPA's decision "shall be initiated within fourteen (14) days after receipt of a *final administrative decision*." 5 GCA § 5481(a) (2005) (emphasis added). However, we have noted that "[t]here is nothing in the text of the procurement law that states that the 'final administrative decision' prior to a section 5480 appeal to the Superior Court must be a decision *on the merits* of the dispute." *DFS*, 2020 Guam 20 ¶ 44 n.11. Thus, upon receiving a final adverse decision from the OPA, a disappointed bidder has two options: "(1) to seek judicial review of the OPA's decision [in the Superior Court] within the requisite fourteen days under 5 GCA § 5481(a), or (2) to refrain from seeking judicial review and allowing the procurement process to go forward upon expiration of the fourteen days." *Teleguam Holdings*, *LLC v. Guam*, 2015 Guam 13 ¶ 31 ("*Teleguam I*") (citing 5 GCA § 5425).

[22]    In *DFS Guam L.P. v. A.B. Won Pat International Airport Authority*, we synthesized our past decisions in procurement cases to explain why the fourteen-day time limitation was jurisdictional:

> [T]he statutory time limits to protest under the procurement law [a]re *jurisdictional in nature*, and this bar to jurisdiction applie[s] to each and every claim raised in the Superior Court under section 5480. It would be logically inconsistent for us to find that a party must timely protest each individual claim or be jurisdictionally barred from bringing it, but also find that a party need not exhaust its protest rights with respect to that same claim. *See, e.g.*, *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust administrative remedies, a person must follow the rules governing filing and prosecution of a claim. . . . [T]hese include time limits.").

2020 Guam 20 ¶ 66 (fourth alteration in original) (emphasis added) (internal citation omitted); *see also, e.g.*, *Harrington*, 171 P.3d at 1005 (stating that party may not circumvent exclusive review process of Administrative Procedure Act "by filing a declaratory judgment action after the time for petitioning for judicial review has passed"); *Smith v. City of Santa Fe*, 171 P.3d 300, 307 (N.M. 2007) ("We perceive no sound judicial policy for allowing a party aggrieved by an administrative decision to forego an available avenue of judicial review only to allow that same party to initiate

judicial review in another form at some future date that no one can predict or rely upon with any certainty."); *City of Dallas v. Stewart*, 361 S.W.3d 562, 580 (Tex. 2012) ("'[E]ven though [a constitutional] claim may be asserted for the first time in the district court upon appeal of the agency order, a failure to comply with the appeal deadlines . . . precludes a party from raising the issue in a separate proceeding.' A party cannot attack collaterally what she chooses not to challenge directly." (second alteration in original) (internal citation omitted)). As a matter of public policy and consistent with the legislative purpose expressed in the Guam Procurement Code, strict enforcement of the jurisdictional bar "seeks 'to achieve . . . broader system-related goal[s], such as facilitating the administration of claims, limiting the scope of a governmental waiver of sovereign immunity, or promoting judicial efficiency.'" *DFS*, 2020 Guam 20 ¶ 81 (alterations in original) (quoting *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133-34 (2008)); *cf. Guam Police Dep't v. Superior Court (Lujan)*, 2011 Guam 8 ¶ 32 (stating that where plaintiff fails to timely file a claim before expiration of the statute of limitations, sovereign immunity is not statutorily waived).

### 2. The Superior Court lacked jurisdiction to enter injunctive relief

[23]     PDS was required to appeal the OPA's decision as a jurisdictional prerequisite before seeking injunctive relief available under 5 GCA § 5480(a). Despite being characterized as "without prejudice," the dismissal by the OPA for lack of subject matter jurisdiction was a final administrative decision. *See DFS*, 2020 Guam 20 ¶ 44 n.11 (noting final administrative decision need not be on merits); *see also, e.g.*, *Lauderdale-El v. Ind. Parole Bd.*, 35 F.4th 572, 576 (7th Cir. 2022) ("Dismissals for lack of subject-matter jurisdiction are necessarily without prejudice, and we routinely exercise jurisdiction over appeals from such dismissals." (internal citation omitted));

2 Guam Admin. R. & Regs. Div. 4 § 12110(a) (2009) ("Within thirty (30) days of a hearing on an appeal . . . the Public Auditor shall issue a final written decision or take other appropriate action.").

[24] After receiving an adverse decision from the OPA on October 5, 2021, the statute required PDS to seek judicial review of the decision in the Superior Court within fourteen days under 5 GCA § 5481(a). *See Teleguam I*, 2015 Guam 13 ¶ 31. Because PDS did not seek review of the OPA's decision in this timeframe, it was jurisdictionally barred from seeking equitable relief to enforce the automatic stay after October 19, 2021, once the fourteen days had run. *See id.* (citing 5 GCA § 5425). Therefore, the Superior Court lacked subject matter jurisdiction over the complaint filed on October 28, 2021.

[25] The OPA's dismissal "without prejudice" cannot be reasonably interpreted to extend the jurisdictional deadline, because the OPA lacks the authority to grant such an extension, and doing so would offend basic principles underpinning the government's limited waiver of sovereign immunity. *See DFS*, 2020 Guam 20 ¶ 82 (quoting *Dolan v. United States*, 560 U.S. 605, 610 (2010)) ("The expiration of a 'jurisdictional' deadline prevents the court from permitting or taking the action to which the statute attached the deadline. The prohibition is absolute. *The parties cannot waive it, nor can a court extend that deadline for equitable reasons*." (some emphasis added)). The Superior Court was without power to exercise equitable jurisdiction or impose injunctive relief on a contemplated procurement award where the administrative remedy had not been invoked in a timely manner. PDS did not appeal from the OPA decision adverse to it within the statutory period of fourteen days. PDS cannot get around the limitation period by framing its action as one for equitable relief.

//

//

## V.  CONCLUSION

**[26]**     This action is limited in scope to injunctive relief seeking enforcement of the automatic stay under 5 GCA § 5480(a), and because PDS did not seek judicial review of the OPA's dismissal of its protest claims, the Superior Court lacked subject matter jurisdiction over any action seeking equitable relief under the Procurement Code.  Thus, we need not determine whether the trial court abused its discretion in granting the Preliminary Injunction.  Accordingly, we **REVERSE** the October 11, 2022 Order granting PDS's Motion for Preliminary Injunction; we **VACATE** the Preliminary Injunction entered under the October 11, 2022 Order; and we **DISMISS** the verified complaint for declaratory and injunctive relief.

**[27]**     While several additional issues were raised by the parties on appeal, given our disposition of the issues above, the court need not consider them.  *See Hemlani v. Hemlani*, 2015 Guam 16 ¶ 33 ("As a general appellate principle, a court will not address issues unnecessary to the resolution of the case before it.").  We **REMAND** to the Superior Court for further proceedings not inconsistent with this opinion.


/s/
KATHERINE A. MARAMAN
Associate Justice

/s/
JOHN A. MANGLONA
Justice *Pro Tempore*


/s/
F. PHILIP CARBULLIDO
Presiding Justice